UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALFREDO RODRIGUEZ, | ) | 1:08-cv-01519-OWW-JMD-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| DERRAL G. ADAMS, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | OBJECTIONS DUE WITHIN THIRTY DAYS |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

In April of 1995, Petitioner pled guilty to one count of second degree murder in the Los Angeles Superior Court. (Pet., Ex. A). The Superior Court sentenced Petitioner to fifteen years to life imprisonment. (Pet. at 15).

Petitioner appeared before California's Board of Parole Hearings ("BPH") in February 2007 for a parole suitability hearing. (Pet. at 17). The BPH denied Petitioner parole after the 2007 hearing. (Id.).

Petitioner challenged the BPH's denial of parole by filing a petition for writ of habeas corpus in the Los Angeles County Superior Court on April 8, 2008. (Pet., Ex. D). The Superior Court denied Petitioner's state habeas petition in a reasoned decision issued on June 10, 2008. (Id.).

///

On June 27, 2008 Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.  (Pet., Ex. E).  The Court of Appeal summarily denied the petition on July 9, 2008.  (Id.). Petitioner then filed a petition for review with the California Supreme Court, which was summarily denied on September 17, 2008. (Pet., Ex. F.)

Petitioner filed the instant petition for writ of habeas corpus in the United States District Court, Eastern District of California on October 8, 2008.  (Doc.1).  Respondent filed an answer to the petition on January 20, 2009. (Doc. 9).  Petitioner filed a traverse on January 27, 2009.  (Doc. 10).

**Factual Background**

Petitioner does not challenge his conviction or sentence.  Rather, Petitioner contends that the BPH's denial of parole to him after his 2007 violates the Due Process Clause of the Fourteenth Amendment.  The BPH relied heavily on Petitioner's commitment offense in finding Petitioner unsuitable for parole.  Petitioner's victim was a twenty-two month old baby and was the son of Petitioner's then-girlfriend. (Pet., Ex. B at 13; 28).  The BPH read a description of Petitioner's crime into the record at the start the parole hearing:

> On January 9th, 1993 prior to three p.m., the defendant was with the 22-month-old victim...Investigation indicates that the nine-year-old witness, who was in the house with the suspect, was in another room when she heard loud bangs.  A friend of the decedent's mother found the decedent slumped over a, "big wheel" tricycle at approximately three p.m...
>
> This friend took the decedent into the house, observed the defendant, and gave CPR...The decedent was transported to Valley Presbyterian Hospital where he was treated for massive skull fracture, torn urethra, and broken clavicle.  Death was pronounced on January 10th, 1993 at 2:15 am...
>
> Defendant...admitted throwing the decedent across the room into pillows.  He admitted that the decedent may have hit the wall.  Investigation indicates that in an oral statement the defendant said he threw the victim across the room five times.

(Pet., Ex. B at 13-14).[1]

At the his 2007 parole hearing, Petitioner stated that throwing the victim across the room "wasn't a very smart thing to do.  It was very irresponsible." (Id. at 15).  Petitioner stated that he was "playing" with the victim, and that the victim "could've hit the wall about five times." (Id. at 16).  In

---

[1] The description read into the record by the BPH came from Petitioner's probation report.  (Id.)

1  response to the presiding parole commissioner's question about how Petitioner felt about the victim,
2  Petitioner stated: "I didn't feel negative towards it." (Id. at 29). The victim's mother, however,
3  stated that Petitioner resented the child and/or the mother's relationship with the victim's father.
4  (Id.).
5        According to the district attorney who spoke at Petitioner's 2007 hearing, when police first
6  began to question Petitioner about the incident, Petitioner stated initially that he didn't know what
7  happened. (Id. at 55). The district attorney recounted the statement of a witness to the crime, who
8  stated:

> I head [sic] two or three lound baging noises. I came out to see what the noise was because it was so loud. When I walked into the living room, no one was there. I walked into the kitchen. I saw [Petitioner] holding Jesus (the victim) and he had him on the counter. I walked over and saw that Jesus' face was real, real, real red and his eyes were half closed. The inside of his eyes were white and he was wobbly. I asked [Petitioner], what happened to Jesus. [Petitioner] told me nothing had happened to him.
>
> Petitioner then tried to stand Jesus up on the counter and he was wobbly and his knees kept folding and he could not stand. [Petitioner] started to shake him and it looked like he was fainting. [Petitioner] grabbed him hard by the arm, put his jacket on, and then [Petitioner] took him out into the patio and sat him on the big-wheel bicycle.
>
> Jesus looked like he fainted and was wobbly. [Petitioner] pushed him real hard when he was on the big-wheel a few time and he fell off of it about two times. I tried to talk to him, but he would not answer. It was like he was real, real sleepy and could not hear me. I told [Petitioner] to stop pushing him like that.
>
> [Petitioner] went into the house, then Jesus went to sleep on his big-wheel. I made a pillow out of my jacket and I put it under his head so he would not hurt his head on the big-wheel.

20  (Id. at 55-57). The district attorney also discussed statements made by the victim's mother:

> the mother talks about how [Petitioner] was incredibly jealous of her prior relationship with the victim's father and that on that particular day he told her. She said that he told her 10 minutes before she found the baby that the child was a mistake and she also said that he told her he wanted to have sex with her, then became angry when she refused and he told her that he would do with the baby's father [sic].

24  (Id. at 57-58). The BPH also relied on Petitioner's previous history of criminality, which includes a
25  juvenile conviction for robbery, in finding Petitioner unsuitable for parole. (Id.at 19-20).
26  ///
27  ///
28  ///

**Discussion**

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a);[2] 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial district where the prisoner is held in custody. *See* 28 U.S.C. § 2241(d).

Petitioner asserts that he is currently incarcerated at Corcoran State Prison in Kings County, California, in violation of his right to due process under the United States Constitution. As Kings County is within the Eastern District of California, the Court has jurisdiction to entertain Petitioner's petition and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

**II.    Standard of Review**

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition for writ of habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted). In reviewing a state court's summary denial of a state habeas petition, the Court must "look through" the summary disposition to the last reasoned decision issued by the state. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991). As the California Court of Appeal and the California Supreme Court both summarily denied Petitioner's state habeas petition, the Court must review the reasoned decision of the Superior Court denying Petitioner relief. The California Supreme Court is presumed to have rejected Petitioner's state habeas petition for the same reasons set forth in the reasoned decision of the Superior Court. *Id.* at 803.

## III.   Petitioner's Due Process Claim

### A.  Due Process in the Parole Context

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits states from depriving persons of protected liberty interests without due process of law. *See e.g.*, *Sass*, 461 F.3d at 1127. The Court must "analyze Petitioner's due process claim in two steps: 'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

California law vests prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1128; *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12 (1979)); *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). While California's parole statute creates a liberty interest protected by the Due Process Clause, *Irons*, 306 F.3d at 903, "since the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in [a criminal prosecution proceeding] is not constitutionally mandated" in the parole context, *Pedro v. Oregon Parole Bd.*, 825 F.3d 1396, 1399 (9th Cir. 1987). The Ninth Circuit has repeatedly held that due process requires that a parole board's denial of parole to a prisoner be supported by "some evidence." *Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*,

1  472 U.S. 445, 457(1985)); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.
2  The requirement that the Board's denial of parole to Petitioner be supported by some evidence is
3  well established federal law.³ *Id.*; *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

4        The some evidence standard is minimal, and is meant only to "[assure] that 'the record is not
5  so devoid of evidence that the findings of...[the] board were without support or otherwise arbitrary.'"
6  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457). "Ascertaining whether [the some evidence]
7  standard is satisfied does not require...weighing of the evidence. ..the relevant question is whether
8  there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at
9  455-456.  Want of due process is not established by showing merely that incompetent evidence was
10  received and considered. *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S.
11  103, 106 (1927).⁴ "Upon a collateral review in habeas corpus proceedings, it is sufficient that there
12  was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.*
13  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside
14  decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456 (citations
15  omitted).

16        In assessing whether the Board's denial of parole to Petitioner is supported by some evidence,
17  the Court's analysis "is framed by the statutes and regulations governing parole suitability
18  determinations in the relevant state." *Irons*, 505 F.3d at 851. Accordingly, the Court must "look to
19  California law to determine the findings that are necessary to deem a prisoner unsuitable for parole,
20  and then must review the record in order to determine whether the state court decision holding that
21  these findings were supported by 'some evidence' in [Petitioner's] case constituted an unreasonable
22  application of the 'some evidence' principle articulated in *Hill*." *Id.* Under California law, the
23  paramount inquiry in determining whether to grant a prisoner parole is whether the prisoner "will
24  pose an unreasonable risk of danger to society if released from prison." CAL. CODE. REGS. TIT 15, §

---

³ The Ninth Circuit is currently considering the "some evidence" standard en banc. *Hayward v. Marshall*, 512 F.3d 536, (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

⁴ *Vajtauer* concerned a collateral challenge to an immigration decision. The Supreme Court cited *Vajtauer* in support of its formulation of the some evidence standard in *Hill*. 472 U.S. at 455.

U.S. District Court
E. D. California

6

2402(a) (2008); *In Re Lawrence*, 44 Cal. 4th 1181, 1202 (Cal. 2008). Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the BPH in applying California's parole statute to Petitioner. Section 2402 provides in part:

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

CAL. CODE. REGS., tit. 15, § 2402(b) (2008). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. CAL. CODE REGS., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The factors listed in section 2402(c) "establish unsuitability [for parole] if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Lawrence*, 44 Cal.4th at 1212. "When a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision ...that the inmate constitutes a current threat to public safety...not merely whether some evidence confirms the existence of certain factual findings." *Id.* A rational nexus between the unsuitability factors applicable to the prisoner and the ultimate determination of dangerousness must exist. *See id.* at 1227.

**B.  Evidence of Petitioner's Unsuitability for Parole**

The Superior Court found that the record contained some evidence to support the BPH's finding that Petitioner would pose an unreasonable risk of dangerousness if released from prison. (Pet., Ex. D). The Court may not disturb the Superior Court's determination unless, based on the record, the Superior Court's finding of some evidence of dangerousness was objectively unreasonable." *Lockyer*, 538 U.S. at 75.

///

Section 2402(c)(1) directs the BPH to consider the commitment offense in determining unsuitability for parole. CAL. CODE. REGS., tit. 15, § 2402 (c)(1). The California Supreme Court has established that "in some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation...where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." *E.g.*, *In re Rosenkrantz*, 29 Cal. 4th 616 , 683 (Cal. 2002). "Factors beyond the minimum elements of the crime include, inter alia, that '[t]he offense was carried out in a dispassionate and calculated manner,' that '[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering,' and that '[t]he motive for the crime is inexplicable or very trivial in relation to the offense.'" *Irons*, 505 F.3d at 852 (quoting CAL. CODE. REGS., tit. 15 § 2402(c)(1)(B), (D)-(E)). The commitment offense satisfies the some evidence standard only if the offense remains probative of current dangerousness. *Lawrence*, 44 Cal. 4th at 1202 (where evidence of inmate's rehabilitation and suitability for parole is overwhelming, and commitment offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence").

That Petitioner's commitment offense was carried out in an especially heinous, atrocious and cruel manner cannot be doubted. As the Superior Court noted, the victim was subjected to prolonged pain while he was repeatedly thrown against the wall, which demonstrates that Petitioner had an exceptionally callous disregard for the victim's suffering. (Pet., Ex. D at 1-2). The victim was abused in a cruel fashion during the offense. (Id.). The Superior Court also noted, correctly, that Petitioner's motive for the offense was inexplicable. The victim, a twenty-two month old baby, could not have provoked Petitioner. (Id. at 2). The Superior Court held that "the inexplicable motive for this offense makes the Petitioner unusually unpredictable and dangerous." (Id.) (*citing In re Scott*, 119 Cal.App.4 th 871, 893 (Cal. Ct. App. 2004). The Court agrees.

The Superior Court found that Petitioner's lack of remorse for the crime constituted further evidence of Petitioner's current dangerousness. (Pet., Ex. at 2). Whether or not a prisoner understands "the nature and magnitude of the offense" is an express factor the BPH may consider in

determining a prisoner's suitability for parole. CAL. CODE. REGS. TIT 15, § 2402 (d) (3).  A prisoner's lack of insight into the crime or attempt to minimize the crime may constitute some evidence of current dangerousness. *E.g., Shaputis,* 44 Cal.4th at 1260.  The BPH was troubled by Petitioner's demeanor when discussing the victim and crime, and stated that Petitioner "need[s] a lot more self-help to get you to really understand" the crime. (Pet., Ex. B at 73).  The BPH also found Petitioner's statement that he was playing with the victim and did not intend to harm him to be incredible.  (Id. at 44-45).

Finally, the Superior Court found that Petitioner's criminal history, which includes a violent juvenile offense, buttressed the BPH's finding of dangerousness. (Pet., Ex. D at 2).  Section 2402(c)(2) directs the BPH to consider a prisoner's previous record of violence in determining whether to release the prisoner on parole. CAL. CODE. REGS. TIT 15, § 2402 (c)(2).  A prisoner may be found unsuitable for parole if the prisoner "has on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." *Id.*

Viewed in light of the BPH's assessment of the nature of the commitment offense, Petitioner's criminal history, and Petitioner's attitude towards his crime, the Court cannot say that the Superior Court's finding that the some evidence standard was satisfied was objectively unreasonable.  The precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the parole board. *See, e.g., Shaputis*, 44 Cal. 4th at 1260.  Accordingly, Petitioner is not entitled to relief.

## RECOMMENDATION

Based on the reasons stated above, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.

1  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The
parties are advised that failure to file objections within the specified time may waive the right to
2  appeal the District Court's order.  *Ylst*, 951 F.2d 1153 (9th Cir. 1991).IT IS SO ORDERED.

3  **Dated:**    **August 3, 2009**                    **/s/ John M. Dixon**
                                              UNITED STATES MAGISTRATE JUDGE